**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Brian Francis JOYCE, Defendant–**
**Appellant.**

**No. 02–30423.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 1, 2003.

Filed Feb. 3, 2004.

---

**54.** *See id.*

Mary C. Geddes, Assistant Federal Public Defender, Anchorage, AK, for the defendant-appellant.

Steven Skrocki, Assistant United States Attorney, Anchorage, AK, for the plaintiff-appellee.

Before: KLEINFELD, GOULD, and TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge:

Brian Francis Joyce seeks to challenge on First Amendment grounds the Internet access and computer use restrictions imposed as special conditions of supervised release following his conviction for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The government argues that Joyce waived his right to appeal these conditions by signing a plea agreement that contained an express waiver of appellate rights under 18 U.S.C. § 3742(a). We conclude that Joyce validly waived his right to bring this appeal, and we dismiss it for lack of jurisdiction.

I

Joyce was indicted for possessing more than 600 images of child pornography on his computer. The parties entered a plea agreement in which Joyce waived his right to appeal his conviction and "any aspect of the sentence imposed." After Joyce's sentencing hearing, the district court imposed a 27–month term of imprisonment and three years of supervised release, and also specified five special conditions of supervised release. Joyce challenges as unreasonable the two conditions that limit his computer use.[1]

II

Before we can address the merits of Joyce's challenge to these special conditions, we must first determine whether he waived his right to appeal them by signing the plea agreement. See United States v. Vences, 169 F.3d 611, 613 (9th Cir.1999) ("It would overreach our jurisdiction to entertain an appeal when the plea agreement effectively deprived us of jurisdiction."). Joyce agrees that the appeal waiver he signed prevents him from challenging the 27–month term of imprisonment. Instead, he argues that the special conditions of release are not part of his "sentence," and thus that the language of his appellate waiver does not bar this challenge.

Whether an appellant has waived his right to appeal is a question of law that we review de novo. United States v. Shimoda, 334 F.3d 846, 848 (9th Cir.2003). A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made. See

---

1. Special condition 3 states: "The defendant shall not have access to any computer capable of accessing the Internet during the period of supervised release provided that if the defendant needs to use a computer in connection with his work the probation officer may after consulting with the defendant and his employer authorize such use[.]"

Special condition 4 states: "During the period of supervised release, the defendant shall notify his employers of his conviction in this case if the prospective employment requires him to have contact with computers or minor children."

*United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir.1996). Plea agreements are contracts between a defendant and the government, *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir.2003), and we generally construe ambiguous language in favor of the defendant. *United States v. Franco–Lopez*, 312 F.3d 984, 989 (9th Cir.2002).

■ In this case, we do not find the plea agreement's use of the word "sentence" to be ambiguous. The plea agreement states:

> B. Waivers of appellate and collateral attack rights The defendant understands that by pleading guilty he waives his right to appeal his conviction. The defendant also understands and agrees that as consideration for the government's commitments under this plea agreement, and if the court accepts this plea agreement and imposes a sentence within its parameters, *he will knowingly and voluntarily waive his right, contained in 18 U.S.C. § 3742, to appeal the sentence imposed.* (Emphasis added).

This passage is located in Section II of the plea agreement, entitled "What the Defendant Agrees to Do." Other agreements in that section include Joyce's voluntary abandonment of his computer's central processing unit and hard drive, payment of a $100 special assessment, and payment of a $3,000 fine during the three-year term of supervised release.

Section IX, entitled "Defendant's Agreement and Understanding of the Terms of This Plea Agreement," also refers to Joyce's waiver of his right to appeal:

> E. I am fully aware that if I were convicted after a trial and a sentence

were imposed on me thereafter, I would have the right to appeal any aspect of my conviction and sentence. Knowing this, I voluntarily waive my right to appeal my conviction. Furthermore, I also knowingly and voluntarily agree to waive my right under 18 U.S.C. § 3742 to appeal *any aspect of the sentence imposed in this case,* if the court imposes a sentence within the parameters of this agreement. (emphasis added).

The use of the words "any aspect of the sentence" in this preceding passage eliminates any arguable ambiguity about whether "sentence" means what 18 U.S.C. § 3742 says it means, or means only time served in prison. By agreeing to waive the right to appeal "any aspect of the sentence imposed in this case," and to waive his right "under 18 U.S.C. § 3742" (which is the only source of any right to appeal the sentence), Joyce waived his right to appeal "any aspect" of the sentence, including not only any term of imprisonment, but also fines and conditions of supervised release. Joyce relies on the fact that the language of the waiver does not specifically refer to supervised release or any conditions of restriction the court might impose. Instead, he deems it significant that the plea agreement repeatedly distinguishes between a "sentence" and "supervised release," or uses the word "sentence" to refer only to the term of imprisonment.[2] Citing this distinction, Joyce argues that he did not knowingly and voluntarily waive his right to appeal the legality of the special conditions of release.

---

2. For example, Joyce points to the following section of the plea agreement: "The maximum statutory penalties for Possession of Child Pornography ... includes [*sic*] 1) a maximum sentence of 5 years, 2) a $250,000 fine, 3) a $100 mandatory special assessment, and 4) a three-year term of supervised re-

lease." The agreement also states that "[t]he parties agree that a sentence of 27 months is an appropriate sentence to be imposed in this case." In each of these instances, the word "sentence" is used to mean "term of imprisonment."

We disagree. The agreement clearly states that Joyce is giving up his right to bring an appeal under 18 U.S.C. § 3742. Section 3742(a)(3) permits defendants to appeal if a sentence imposed by the district court

> is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range[.]

18 U.S.C. § 3742(a)(3). This section notes that defendants usually have the right to appeal any "sentence" in which the district court gives a greater fine, prison term, period of supervised release, or stricter condition of supervised release than is authorized by the Sentencing Guidelines. A "sentence" thus clearly includes all those different forms of punishment.

■ The word "sentence" encompasses both prison time and periods of supervised release in other parts of Title 18 as well. *See United States v. Soto–Olivas,* 44 F.3d 788, 790 (9th Cir.1995) (noting that under the "plain language" of 18 U.S.C. § 3583(a), supervised release is "a part of the sentence"); *see also United States v. Liero,* 298 F.3d 1175, 1178 (9th Cir.2002) ("[Section] 3583(a) clearly provide[s] that supervised release, just like a term of imprisonment, is 'part of the sentence.' Our cases dispel any doubt about what this means.").

We do note, however, that in addition to this broad meaning in the statute, we have employed the noun "sentence" to refer specifically to the term of imprisonment. *See, e.g., United States v. Lamont,* 330 F.3d 1249, 1251 (9th Cir.2003) ("The district court sentenced Lamont to twenty-four months with credit for time served, to be followed by three years of supervised release. Lamont has served his sentence and is currently on supervised release."); *United States v. Mendoza–Prado,* 314 F.3d 1099, 1102 (9th Cir.2002) (per curiam) ("The district court imposed a 127–month sentence, plus a term of supervised release and a $200 special assessment.").

Despite the dual meaning of "sentence" in common usage, the statute that provides the only source of Joyce's right to appeal is crystal clear. Under 18 U.S.C. § 3742(a)(3), a "sentence" can include fines, periods of imprisonment and supervised release, and mandatory and special conditions of supervised release. That is the only statutory basis upon which Joyce may invoke the jurisdiction of this court to challenge any aspect of the sentence imposed, including an attack on specific conditions of his supervised release. Given this language, we hold that Joyce knowingly and voluntarily waived his right to challenge the special conditions of supervised release on the grounds he now raises.

The dissent reasons that we are bound by our prior decision in *United States v. Bolinger,* 940 F.2d 478 (9th Cir.1991), to reach the merits of Joyce's appeal. In *Bolinger,* a defendant challenged his 36–month term of imprisonment and a special condition of supervised release that forbade him from associating with motorcycle gangs. *Id.* at 479. Despite holding that Bolinger's plea agreement validly waived his right to appeal, the court nevertheless proceeded to address the merits of his arguments regarding the special condition. *Id.* at 480. The court did so without any discussion about whether Bolinger's waiver of his right to appeal his "sentence" included only terms of imprisonment and not conditions of supervised release. In the absence of any holding or explanation whatsoever on the specific issue Joyce

raises, we do not find *Bolinger* to be instructive.[3]

Because Joyce validly waived his right to appeal any aspect of his sentence, including the district court's imposition of special conditions of supervised release, we lack jurisdiction to consider the merits of his challenge to the computer and Internet use restrictions.

**DISMISSED for lack of jurisdiction.**

GOULD, Circuit Judge, dissenting:

I respectfully dissent. The majority holds that Joyce's waiver of rights to appeal his sentence in his plea agreement that led to his conviction for possessing child pornography prevents him from challenging the conditions of supervised release that now restrict his Internet access. I would hold, to the contrary, that the term "sentence" as used in Joyce's plea agreement and waiver is ambiguous in meaning, and, construing the ambiguity in Joyce's favor, the waiver of appeal does not bar him from appealing the special conditions of supervised release imposed by the district court. Reaching the merits, I would uphold the special conditions of supervised release imposed by the district court because they are designed to meet the ends of rehabilitation and protection of the public.

It is sensible for a district court reasonably to restrict Internet access by one convicted of possessing child pornography. The conditions imposed here as prerequisite to Joyce's supervised release from prison protect the public, and serve Joyce as well, by making it less likely that he will further harm himself or others by recidivism on his proclivity for child pornography. In my view, we should affirm the district court on the merits, instead of dismissing the appeal.

**I**

Joyce's plea agreement contained the following provision:

*II.B. Waivers of appellate and collateral attack rights*

The defendant understands that by pleading guilty he waives his right to appeal his conviction. The defendant also understands and agrees that as consideration for the government's commitments under this plea agreement, and if the court accepts this plea agreement and imposes a sentence within its parameters, he will knowingly and voluntarily waive his right, contained in 18 U.S.C. § 3742, to appeal the sentence imposed.[1]

Plea Agreement at 4. Three pages later, the plea agreement states that the maximum statutory penalties for a violation of 18 U.S.C. § 2252A(a)(5)(B) include: "1) a maximum *sentence* of 5 years, 2) a $250,000 fine, 3) a $100 mandatory special assessment, and 4) a three-year term of supervised release." Plea Agreement at 7 (emphasis added). A comparison of these two passages reveals an ambiguity of the term "sentence." In the appeal waiver provision, "sentence" may indirectly, by reference to § 3742, refer to the entire

---

**3.** We note that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925). In *Bolinger,* there is no indication that the defendant or the government brought this issue to the court's attention, nor is there any indication that the court explicitly considered or decided it.

**1.** The plea agreement also stated that Joyce "knowingly and voluntarily agree[s] to waive [his] right under 18 U.S.C. § 3742 to appeal any aspect of the sentence imposed in this case, if the court imposes a sentence within the parameters of this agreement." (emphasis added). Plea Agreement at 14.

judgment imposed on Joyce, including the term of imprisonment, the fine, the special assessment, and the imposition of mandatory and special terms of supervised release. In the language detailing maximum penalties for a violation of 18 U.S.C. § 2252A(a)(5)(B), "sentence" only refers to the term of imprisonment. The lack of an explicit waiver of a right to appeal special conditions of supervised release and the dual meaning of "sentence" in different parts of Joyce's plea agreement create an ambiguity as to what "sentence" means in the context of the plea agreement and its waiver provision.

I recognize that the government's interpretation of "sentence" as encompassing all aspects of the judgment is plausible, and thus my colleagues' view is not entirely unreasonable. However, in my view, given the government's choice of language in Joyce's plea agreement, Joyce's interpretation of "sentence" to encompass only the term of imprisonment is also plausible and likewise cannot be said to be unreasonable.

The language in the plea agreement detailing maximum penalties for a violation of 18 U.S.C. § 2252A(a)(5)(B) uses "sentence" only to refer to the term of imprisonment. In addition, page two of the government's sentencing memorandum uses "sentence" to refer to the term of imprisonment and the fine, with conditions of supervised release being a separate category.[2] Thus, it is not unreasonable for Joyce to construe the waiver of appeal as applying only to his term of imprisonment.

The majority acknowledges that plea agreements "are contracts between a defendant and the government," and that "we generally construe ambiguous language in favor of the defendant." Slip op. at 922–23. Nonetheless, the majority errs by holding that no ambiguity exists in the plea agreement for reasons that in context are unconvincing.

First, the majority cites to 18 U.S.C. § 3742(a)(3) for the proposition that "defendants usually have the right to appeal any 'sentence' in which the district court gives a greater fine, prison term, period of supervised release, or stricter condition of supervised release than is authorized by the Sentencing Guidelines. A 'sentence' thus clearly includes all those different forms of punishment." *Id.* at 924. Section 3742(a)(3) permits a defendant to appeal an otherwise final sentence imposed by the district court if the sentence

> is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range.

Although § 3742(a)(3) might be read to suggest that the term "sentence" encompasses elements other than the term of imprisonment, this subsection does not define the term "sentence."[3]

---

**2.** The relevant passage in the sentencing memorandum states, "[t]he government will be requesting that the court *sentence* the defendant in conformity with the terms of the plea agreement, that is a term of imprisonment for 27 months, and a fine of $3,000. *Additionally*, and given the nature of this offense, the government will request that the court, as conditions of supervised release, impose the following additional conditions to

the standard terms ..." Sentencing Memorandum at 2 (emphases added).

**3.** It is not apparent that Joyce's appeal is based on § 3742(a)(3). Section 3742(a)(3) permits a defendant to appeal the terms of a special condition of supervised release only where that condition is "more limiting ... under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range."

Second, the majority states that the term "sentence," as used in other sections of Title 18 of the United States Code, incorporates supervised release, and that we have employed the same interpretation in our case law. But this assertion is of no moment. We hold the government to the literal terms of the plea agreement. *United States v. Camarillo–Tello*, 236 F.3d 1024, 1026 (9th Cir.2001) (citation omitted) ("Plea agreements are contracts, and the government is held to the literal terms of the agreement."). If, by its literal terms, the plea agreement is so ambiguous as to permit an interpretation of "sentence" to refer to a term of imprisonment only, the defendant should not have to scour other parts of the United States Code or our precedents to decipher what the government *might* mean.

It is most unfortunate that the majority does not follow our precedent in *United States v. Bolinger*, 940 F.2d 478 (9th Cir. 1991). In *Bolinger*, the defendant entered into a plea agreement containing this appeal waiver provision:

> Defendant hereby waives any right to raise and/or appeal any and all motions, defenses, probable cause determinations, and objections which defendant has asserted or could assert to this prosecution and to the court's entry of judgment against defendant and imposition of sen-

tence under Title 18, United States Code, section 3742 (sentence appeals). *Id.* at 479. Bolinger was sentenced to a term of imprisonment of 36 months, assessed a fine of $3,000, and given 36 months' supervised release, during which time, as a special condition of supervised release, he was prohibited from associating with motorcycle clubs.

Bolinger appealed his sentence, arguing that the district court misapplied the United States Sentencing Guidelines ("Guidelines") and that the district court imposed an improper condition of supervised release. We held that Bolinger's waiver of appeal as to his term of imprisonment was valid and refused to consider that claim. However, after finding the waiver valid, in *Bolinger* we explicitly reached the merits of Bolinger's appeal of the special condition of supervised release and affirmed the district court. *Id.* at 480–81. If the majority's position were correct, then our court in *Bolinger* could not reach the merits and instead would have been required to dismiss the appeal of conditions once the waiver was sustained.

The majority declines to follow *Bolinger* because that panel reached the merits of Bolinger's appeal regarding supervised release "in the absence of any holding or explanation whatsoever on the specific issue Joyce raises ..." Slip op. at 925. But what a court *does* is a more important statement of its holding for *stare decisis* purposes than what it merely *says*.[4]

Section 3563(b)(6) addresses the situation where a district court directs a defendant to "refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons," and § 3563(b)(11) addresses the situation where a district court directs a defendant to "reside at, or participate in the program of, a community corrections facility ... for all or part of the term of probation." Here, Joyce argues that the special condition of supervised release prohibiting him from accessing the Internet is overbroad and in contravention of Joyce's First Amendment rights. To my thinking, Joyce is challenging the special condition of super-

vised release under § 3742(a)(1), which permits a defendant to challenge a final sentence if it "was imposed in violation of law." Section 3742(a)(1) contains no statement suggesting that a "sentence" includes special terms of supervised release.

4. In my view, when an implicit decision is necessary for the court to reach the merits, then we ought to view even that implicit decision as a holding of the court. Conversely, when there are multiple implicit paths by which a court may have reached the merits, no one of those implicit paths can be described as a holding of the court.

*See generally In re Osborne,* 76 F.3d 306, 309 (9th Cir.1996) ("under the doctrine of *stare decisis* a case is important only for what it decides—for the 'what,' not for the 'why,' and not for the 'how.' Insofar as precedent is concerned, *stare decisis* is important only for the decision, for the detailed legal consequence following a detailed set of facts."). In this sense, our law and precedent explicitly follows the common sense maxim that in practical affairs one must watch what people do, not merely what they say. The *Bolinger* court beyond doubt proceeded to reach the merits of a challenge to special conditions of supervised release after first upholding an appeal waiver in a plea agreement that mirrors the waiver here. *Bolinger* must fairly be read as a binding precedent of our circuit, holding that such a waiver in a plea agreement does not necessarily preclude a challenge on appeal to special conditions of supervised release. *Bolinger,* decided by our court, has precedential value, and controls our decision. *See Hart v. Massanari,* 266 F.3d 1155, 1170 (9th Cir. 2001) ("If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect. Binding authority must be followed unless and until overruled by a body competent to do so."). It seems inescapable that *Bolinger's* holding is contradicted by the majority's conclusion in this case.[5] Instead, following *Bolinger,* the majority should put to the side its argument favoring waiver and dismissal and instead reach the merits. Were that done, I would join the majority in a *sua sponte* panel request for possible en banc review, to permit our colleagues to decide by their vote if we should reexamine what was done in *Bolinger.*

## II

On the merits of Joyce's appeal, I turn to the challenged conditions. As relevant here, the district court ordered two special conditions of Joyce's supervised release:

3. The defendant shall not have access to any computer capable of accessing the Internet during his period of supervised release, provided that if he needs to use a computer at work in connection with his work, his probation officer may after consulting with him and with the employer authorize such use.

4. During the period of supervised release, the defendant shall notify his employers of his conviction in this case if the prospective employer requires him to have contact with computers or minor children.

Joyce argues that these conditions of his supervised release are overbroad and impermissibly restrict his First Amendment rights because they are not reasonably related to legitimate sentencing concerns. Because his waiver by plea agreement does not preclude this argument on appeal, we are required to address it.

As a general rule, a district court has discretion to impose special conditions of supervised release under 18 U.S.C. § 3583(d). However, this discretion is not unconstrained, and we have recognized the following guidelines:

First, [special conditions of supervised release] must be reasonably related to the factors set forth in[18 U.S.C.] §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), and

---

5. The majority's argument that *Bolinger* doesn't explain itself on the key issue before us might make sense as a reason for our panel to urge en banc review, and I would not oppose a joint request of the panel on that score. But unless and until an en banc court or higher authority were to overrule or limit *Bolinger,* we are compelled to follow it and reach the merits.

(a)(2)(D). These factors are: consideration of "the nature and circumstance of the offense and the history and characteristics of the defendant;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed [training], medical care, or other correctional treatment in the most effective manner." Second, the conditions must involve no greater deprivation of liberty than is reasonably necessary for the latter three purposes. Finally, the conditions must be consistent with pertinent policy statements of the Sentencing Commission.

*United States v. Fellows*, 157 F.3d 1197, 1203–04 (9th Cir.1998) (citation omitted). "The factors listed in § 3353(a), however, merely guide the district court's discretion and do not act as a checklist of requisites, each of which must be found before any condition of supervised release may be prescribed." *United States v. Gallaher*, 275 F.3d 784, 793–94 (9th Cir. 2001) (internal quotation omitted). Similarly, even if a district court's imposition of special conditions of supervised release were to restrict a defendant's fundamental constitutional rights, such restriction under *Bolinger*, which assessed a contention that a condition of supervised release infringed freedom of association, is valid if: "(1) primarily designed to meet the ends of rehabilitation and protection of the public and (2) reasonably related to such ends." *Bolinger*, 940 F.2d at 480.

Joyce advances several arguments in support of his contention that the special conditions in question are overbroad and violate his First Amendment rights. First, Joyce argues that because "nearly all computers now sold include internal modems," the distinction between a computer and a computer "capable of accessing the Internet" is a "distinction without a difference." Joyce urges that, under the special condition barring him from accessing a computer "capable of accessing the Internet," Joyce would be prevented from entering public libraries, "Kinko's" copy stores, cybercafes, or any other establishment that contains an Internet-ready computer.

This misguided argument misses the mark. The condition doesn't stop him from entering establishments that have Internet-capable computers. Reasonably interpreted, the provision merely restricts his ability to tie in to the Internet through an Internet Service Provider ("ISP") on a computer. His construction of the special condition in question strains credulity. Also, computers can be purchased without modems (or modems can be removed or disabled). Most importantly, one can buy a computer with an internal modem and decline to link the computer to the Internet through an ISP. Regardless, if Joyce elects during his period of supervised release to own a computer in his household, all he need do is *not connect it to the Internet*. Joyce's computer then would be incapable of accessing the Internet, and he would be in compliance with the special condition of supervised release.

I am also quite certain that the condition does not restrict Joyce's ability to borrow a book at the local library, make a late night photocopy, or buy a cup of coffee from a store that happens to offer Internet-ready computers. Rather, Joyce cannot use a computer at such an establishment to connect to the Internet where he might mistakenly indulge a desire for child pornography. Under a reasonable construction of the terms of supervised release, to comply Joyce merely must refrain from sitting down in front of a computer that accesses the Internet, except to the extent required by his employer (and after proper notification to his employer).

Second, Joyce argues that the prohibition on Internet use is a greater depriva-

tion of liberty than is reasonably necessary. However, this argument is premised on the incorrect assumption that the district court intended a *per se* prohibition on all computer use. The district court only prohibited use of a computer "capable of accessing the Internet." As explained, under a reasonable construction Joyce can buy and have any computer he wants so long as he does not connect it to the Internet via an ISP.

Third, Joyce argues that the district court's imposition of the special conditions in question is objectionable because, given the nature of Joyce's offense, the conditions are not reasonably related to either Joyce's rehabilitation or protection of the public. This argument is also without merit. It was reasonable for the district court to conclude that Joyce should not be subjected to the temptation of accessing illicit materials from the Internet, regardless of his location, both to facilitate Joyce's rehabilitation and to protect the inevitable victims of child pornography. The special restrictions on computer Internet access promote the essential goal of protecting the public by ensuring that Joyce does not again victimize children by facilitating demand for child pornography. The district court did not abuse its discretion when it imposed these special conditions restraining Joyce's Internet access by computer as a condition for his supervised release.

This conclusion is consistent with our recent decision in *United States v. Rearden*, 349 F.3d 608 (9th Cir.2003). In *Rearden*, the defendant was convicted of shipping child pornography over the Internet. We affirmed the district court's imposition of a special condition of supervised release prohibiting the defendant from possessing or using a computer with access to any online service without prior approval of the probation officer, noting that the restriction was "reasonably related to the offense that involved e-mail transmissions of quite graphic child pornography, and to the important goal of deterring him during the period of supervision from reverting to similar conduct, and thus, to rehabilitation and protecting the public." *Id.* at 621. The special conditions imposed here also achieve the goals of deterring Joyce from comparable offensive conduct, of rehabilitating Joyce, and of protecting the public. We must recognize that the possession of child pornography, even by one who is not a purveyor, is harmful to child victims because it facilitates the illicit demand that leads to the exploitation and degradation of children for the benefit of child pornographers and those to whom they cater.

The case law on comparable issues from our sister circuits is somewhat divided.[6]

---

**6.** *See United States v. Zinn*, 321 F.3d 1084, 1093–94 (11th Cir.2003) (affirming ban on Internet use without consent of probation officer where defendant received child pornography over the Internet); *United States v. Ristine*, 335 F.3d 692, 695–96 (8th Cir.2003) (affirming conditions of periodic examinations of defendant's computer and the installation of monitoring software where defendant possessed and traded child pornography on the Internet); *United States v. Walser*, 275 F.3d 981, 988 (10th Cir.2001) (affirming imposition of ban on access to the Internet without approval of probation officer where defendant was convicted of possessing child pornography); *United States v. Paul*, 274 F.3d 155, 170 (5th Cir.2001) (affirming ban on computer possession and Internet use where defendant was convicted of possessing child pornography and electronically transferred such materials). *But compare United States v. Freeman*, 316 F.3d 386, 392 (3d Cir.2003) (reversing ban on Internet use where defendant was convicted of possessing child pornography via computer); *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir.2002) (holding that ban on access to computers, the Internet and bulletin board systems without approval by a probation officer was a greater deprivation on defendant's liberty than reasonably necessary where defendant possessed and traded child pornography over

However, I am not convinced that the special condition prohibiting access to a computer capable of accessing the Internet involves "a greater deprivation of liberty than is reasonably necessary." As defense counsel conceded at the sentencing hearing, "limitation of home access to Internet seems appropriate, because that's what got him [Joyce] into trouble here." Defense counsel also observed at Joyce's sentencing hearing, "the key would probably be to avoid a scenario similar to what we had here, where he [Joyce] was at home alone with Internet access." In my view, any distinction between home access to the Internet, as opposed to access to the Internet at any other location, is illogical and would not achieve the statutory goals of deterrence, protection of the public, and treatment. Given the circumstances, the district court did not abuse its discretion in ordering the special conditions in question. To the contrary, the restrictions on Internet use were reasonably related to the purposes of protecting the public and Joyce himself.

### III

For the above reasons, I respectfully dissent.

---

the Internet); *United States v. White,* 244 F.3d 1199, 1206 (10th Cir.2001) (suggesting in *dicta* that a ban on access to the Internet is overreaching where defendant is convicted of receiving child pornography over the Internet).